# In the United States Court of Federal Claims

No. 17-657C

(Filed: April 3, 2018)

|  |  |  |
|---|---|---|
| BECHTEL NATIONAL, INC., | ) | Keywords: Breach of Contract; Contractor Costs; Allowability; <u>Geren v. Tecom, Inc.</u> |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| THE UNITED STATES OF AMERICA, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

*Stephen D. Knight*, Smith Pachter McWhorter PLC, Tysons Corner, VA, for Plaintiff. *Edmund M. Amorosi* and *Laura A. Semple*, Smith Pachter McWhorter PLC, and *Leslie Droubay Killoran*, Bechtel National, Inc., Of Counsel.

*Geoffrey M. Long*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, for Defendant, with whom were *Patricia M. McCarthy*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General.

**OPINION AND ORDER**

**KAPLAN, Judge.**

Plaintiff Bechtel National, Inc. operates a nuclear waste treatment plant in the state of Washington, pursuant to a contract with the Department of Energy. In 2010 and 2012, two former Bechtel employees filed lawsuits against the company alleging, among other things, sexual and racial harassment and discrimination. Bechtel and the former employees settled the lawsuits out of court. Bechtel then sought reimbursement of its litigation costs from the Department of Energy under the contract.

The Department of Energy provisionally approved Bechtel's request. But after further consideration, the Department disallowed the costs, relying, at least in part, on the Federal Circuit's decision in <u>Geren v. Tecom, Inc.</u>, 566 F.3d 1037 (Fed. Cir. 2009). After the contracting officer issued a final decision upholding the disallowance, Bechtel filed a complaint in this court alleging breach of contract.

Now before the Court are the parties' cross-motions for summary judgment. For the reasons set forth below, the Court finds that the government did not breach its contract with Bechtel and that it is entitled to judgment as a matter of law. Accordingly, Bechtel's motion for

summary judgment is **DENIED** and the government's motion for summary judgment is **GRANTED**.

## BACKGROUND

### I.  Bechtel's Contract with the Department of Energy

Between 1943 and 1990, the federal government produced approximately two-thirds of its weapons-grade plutonium for use in nuclear weapons at the Hanford Site, located in the state of Washington. Washington v. Moniz, No. 2:08-CV-5085-RMP, 2015 WL 12643792, at *1 (E.D. Wash. May 11, 2015). The site occupies 586 square miles and at one point contained nine nuclear reactors. Id. The production of plutonium at Hanford created substantial chemical and radioactive waste. Id. That waste has been stored in underground tanks "with capacities ranging from 55,000 to 1.16 million gallons." Id. As of 2015, there were 177 underground storage tanks at the site containing approximately 56 million gallons of nuclear waste. Id. The waste accounts for 60% of the "high level waste" for which the Department of Energy is responsible. Id.

Since operations ceased in 1990, activities at the Hanford Site have been focused on cleaning the radioactive waste and contamination left behind. See id. On August 31, 2000, the Department of Energy issued a solicitation for a cost-plus-incentive fee contract for the provision of "personnel, materials, supplies, and services . . . necessary and incident to designing, constructing, and commissioning the Hanford Tank Waste Treatment and Immobilization Plant." Pl. Bechtel Nat'l Inc.'s Mem. in Supp. of Its Mot. for Summ. J. (Pl.'s Mem.) Ex. 2 at 2, 5, ECF No. 9-2.[1]

In December 2000, Bechtel was awarded the contract for the design, construction, and operation of the Hanford waste treatment plant (WTP). Id. at 2. The contract incorporated provisions of the Federal Acquisition Regulation and the Department of Energy Acquisition Regulation. As relevant to the dispute in this case, the parties included the March 2000 version of FAR 52.216-7 (incorporated at clause I.19B); the February 1999 version of FAR 52.222-26 (at clause I.43); and the June 1997 version of DEAR 970.5204-31 (at clause I.113). Id. at 174–76.

Clause I.43 of the contract is entitled "Equal Opportunity." Id. at 175. It incorporates FAR 52.222-26, which provides that while "performing this Contract, the Contractor agrees" that it "shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin." Def.'s Resp. to Pl.'s Mot. for Summ. J., & Cross-Mot. for Summ. J. App. (Def.'s App.) at 103, ECF No. 15-1.

Clause I.113 of the contract (incorporating DEAR 970.5204-31) is entitled "Insurance – Litigation and Claims." Pl.'s Mem. Ex. 2 at 176. It provides in pertinent part that "[t]he contractor shall give the contracting officer immediate notice in writing of any legal proceeding, including any proceeding before an administrative agency, filed against the contractor arising out

---

[1] The Court's citations for Bechtel's Exhibit 2 use the page numbers listed at the top of the document by the Court's electronic filing system, as Exhibit 2 lacks continuous internal page numbering.

2

of the performance of this contract," and that "[t]he contractor, with the prior written authorization of the contracting officer, shall proceed with such litigation in good faith and as directed from time to time by the contracting officer." DEAR 970.5204-31(b) (2000). It further provides at subsection (e) that the contractor "shall be reimbursed . . . [f]or liabilities (and reasonable expenses incidental to such liabilities, including litigation costs) to third persons," "[e]xcept as provided in subparagraphs (g) and (h)."

Subparagraph (g)(1) states, in turn, that:

> Notwithstanding any other provision of this contract, the contractor shall not be reimbursed for liabilities (and expenses incidental to such liabilities, including litigation costs, counsel fees, judgment and settlement)—
>
> > (1) Which are otherwise unallowable by law or the provisions of this contract . . . .

And subparagraph (h) states that:

> In addition to the cost reimbursement limitations contained in DEAR 970.3101-3, and notwithstanding any other provision of this contract, the contractor's liabilities to third persons . . . shall not be reimbursed if such liabilities were caused by contractor managerial personnel's
>
> > (1) Willful misconduct,
> >
> > (2) Lack of good faith, or
> >
> > (3) Failure to exercise prudent business judgment . . . .

Finally, clause I.19B of the contract, entitled "Allowable Cost and Payment," states in pertinent part that the "Government shall make payments to the Contractor when requested as work progresses . . . in amounts determined to be allowable by the Contracting Officer in accordance with Subpart 31.2 of the Federal Acquisition Regulation (FAR) in effect on the date of this contract and the terms of this contract." FAR 52.216-7(a) (2000). Subpart 31.2, in turn, contains FAR 31.201-2, which, as in effect on the date of the contract, stated in part that "[t]he factors to be considered in determining whether a cost is allowable include the following: (1) Reasonableness. (2) Allocability. (3) Standards promulgated by the CAS Board, if applicable; otherwise, generally accepted accounting principles and practices appropriate to the particular circumstances. (4) Terms of the contract. (5) Any limitations set forth in this subpart." FAR 31.201-2(a) (2000).

## II. The Discrimination Lawsuits and Settlements

In September 2010, Bechtel notified the Department of Energy of potential litigation arising out of its work at the Hanford Site, as required by clause I.113 of the contract. See Def.'s

3

App. at 208. In response, on October 7, 2010, the Department informed Bechtel in writing that "[i]n accordance with Clause I.113, [it was] authorized to proceed with defense of th[e] case," but that "[a]uthorization [was] not a determination of the allowability of costs to the subject contract; that determination [would] be made at a later date." Id. Such costs, the Department continued, would "be reviewed pursuant to relevant statutes, regulations, terms of the subject contract, and the holding of the U.S. Court of Appeals for the Federal Circuit in Secretary of the Army v. Tecom, 566 F.3d 1037 (Fed. Cir. 2009)." Id. It also stated that Bechtel was "authorized to provisionally charge outside and in-house costs to the contract, although such costs [could] later be determined to be disallowed." Id.

A few months later, on December 22, 2010, Linda Mims-Johnson, a former employee at the Hanford Site, filed a lawsuit against Bechtel arising out of her termination on April 12, 2010. Id. at 209. Ms. Mims-Johnson, who is African-American, alleged that during her employment she had been subjected to a hostile work environment and racial and sexual harassment in violation of 42 U.S.C. § 1981 and state law. Id. at 219. Additionally, she alleged that Bechtel transferred and ultimately terminated her employment in retaliation for the actions she took to report and stop the allegedly harassing behavior. Id. at 220. Finally, she asserted that Bechtel had engaged in disparate treatment and took adverse employment actions against her on the basis of her sex and race. Id. at 220–21. Ultimately, Bechtel and Ms. Mims-Johnson settled the lawsuit and on March 12, 2012, the parties filed a joint stipulation of dismissal. See id. at 230–31.

On April 27, 2012, a second discrimination lawsuit was filed against Bechtel, by another former employee at the Hanford Site, Willie S. Lockhart. Id. at 233. Mr. Lockhart alleged that Bechtel discriminated and retaliated against him in violation of 42 U.S.C. § 1981 and state law, on the basis of race and disability. Id. at 234. In May, Bechtel informed the Department of Energy of the lawsuit pursuant to clause I.113, and the Department authorized Bechtel to proceed with defense of the case. Id. at 239. It repeated the warning contained in its October 2010 letter that its authorization was "not a determination of the allowability of costs" and that such a determination would be made at a later date in light of, inter alia, the Federal Circuit's decision in Tecom. Id. Bechtel and Mr. Lockhart settled this lawsuit and in November 2012 filed a joint motion to dismiss with prejudice. Id. at 240.

Bechtel subsequently submitted invoices to the Department of Energy seeking reimbursement for its costs in defending these lawsuits. Pl.'s Mem. Ex. 1 ¶ 22, ECF No. 9-1. It requested $250,000 for each suit. Id. The Department then reimbursed Bechtel $500,000 for those costs on a provisional basis. Answer ¶ 31, ECF No. 6.

### III. The Department's Disallowance of Costs

On May 11, 2016, the contracting officer wrote a letter to Bechtel entitled "Notice of Intent to Disallow Costs for Legal Defense Costs." Def.'s App. at 245. He stated that the Department had "been reviewing the costs incurred in defending the lawsuit filed . . . by Willie S. Lockhart, as well as the case filed . . . by Linda Mims-Johnson." Id. The contracting officer informed Bechtel that "[a]s a result of this review, [he had] determined that the costs incurred by [Bechtel] in defending these matters [were] unallowable under the standards set forth in Tecom." Id. He found that, "in each case, the plaintiff's claim had more than very little likelihood of

success on the merits." Id. He concluded, therefore, that under Tecom the "defense costs related to the claim[s] are not allowable." Id.

Bechtel responded to the contracting officer's letter on July 13, 2016. Id. at 247. On September 13, 2016, the contracting officer issued a "Final Contracting Officer's Decision – Legal Defense Costs Disallowance." Id. He wrote that the "Notice of Intent to Disallow Costs [would] not be withdrawn, and [that] th[e] letter constitute[d] [his] final decision on this matter." Id. at 248. The contracting officer also wrote that the government would offset the amount it had provisionally reimbursed Bechtel from future amounts the government owed to it as a result. See id. at 256.

**IV.     This Action**

Bechtel filed its complaint against the government in this court on May 18, 2017. ECF No. 1. In the complaint, Bechtel alleges that the Department of Energy breached clause I.113(e) of the contract when it disallowed the costs Bechtel incurred in connection with its settlement of the two discrimination complaints. See Compl. ¶¶ 52–55. It seeks declaratory relief from the Court concluding that "the allowability of costs for third party litigation and claims is governed by Clause I.113, not Tecom" and reversing the contracting officer's final decision. Id. at 10–11.

On September 17, 2017, the parties filed their joint preliminary status report, in which they stated their views that the case "should be submitted on cross-motions for summary judgment prior to discovery." Joint Prelim. Status Report at 1, ECF No. 7. Accordingly, on October 6, 2017, Bechtel filed its motion for summary judgment. ECF No. 8. The government filed a response and cross-motion for summary judgment on December 4, 2017. ECF No. 15. The Court held oral argument on the motions on March 22, 2018. ECF No. 22.

**DISCUSSION**

**I.     Subject Matter Jurisdiction**

The Tucker Act grants the United States Court of Federal Claims the power "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). Further, the Court has "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 [i.e., the Contract Disputes Act (CDA)], including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act." Id. § 1491(a)(2).

The CDA applies to, among other things, an "express or implied contract . . . made by an executive agency for . . . the procurement of services" or "the procurement of construction, alteration, repair, or maintenance of real property." 41 U.S.C. § 7102(a) (2012). Under the CDA, it is a jurisdictional prerequisite that the contracting officer issue a final written decision on any claim before it is brought in this court. See id. § 7103(a)(3), (d); M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327 (Fed. Cir. 2010). Following the contracting officer's written

5

decision (or failure to issue a decision in the allotted timeframe), a contractor may bring an action directly on the claim in the Court of Federal Claims, which reviews the matter de novo. See 41 U.S.C. § 7104(b).

A contractor is not required to file its own claim with the contracting officer prior to challenging a government claim in the Court of Federal Claims where the contracting officer has issued a final decision on the government's claim. See Placeway Constr. Corp. v. United States, 920 F.2d 903, 906 (Fed. Cir. 1990); Tiger Nat. Gas, Inc. v. United States, 61 Fed. Cl. 287, 292–93 (2004); Greenhill Reforestation, Inc. v. United States, 39 Fed. Cl. 683, 686–87 (1997); Cecile Indus., Inc. v. United States, 18 Cl. Ct. 730, 732 (1989). The government's assertion of a set-off is a claim by the government under the CDA. Placeway Constr. Corp., 920 F.2d at 906; Roxco, Ltd. v. United States, 77 Fed. Cl. 138, 145–47 (2007); Volmar Constr., Inc. v. United States, 32 Fed. Cl. 746, 752 (1995).

Here, Bechtel is challenging the government's assertion of a set-off based on the government's interpretation of the parties' contract. The contracting officer has issued a final decision reflecting the basis and amount of that set-off. Accordingly, the Court has jurisdiction over Bechtel's complaint.

**II.    Merits**

Bechtel argues that the contracting officer erred when he referenced the court of appeals' decision in Tecom as a basis for disallowing Bechtel's liability costs for its two discrimination settlements. It contends that Tecom has no bearing on the allowability of those costs because, unlike in Tecom (where the contract was silent as to the issue), the contract here (at clause I.113(e)) "explicitly allocat[ed] the risk of third party claims to the Government." Pl.'s Mem. at 27, ECF No. 9. Bechtel further contends that its interpretation of the contract is supported by the Department of Energy's prior course of performance in reimbursing Bechtel and others for liabilities incurred in discrimination cases. See id. at 21–25.

Bechtel's arguments lack merit. The issue before the court of appeals in Tecom was whether a contractor's costs of defending against and settling a Title VII sexual harassment lawsuit were allowable under the FAR where the contract incorporated FAR 52.222-26. See 566 F.3d at 1039–40. As explained above, that provision prohibits contractors from discriminating against any employee because of race, color, religion, sex, or national origin. The court reasoned that to be allowable under FAR 31.201-2, costs must meet five requirements, one of which is compliance with the terms of the contract. Id. at 1040–41. The court of appeals concluded that the costs of an adverse judgment in the sexual harassment case "would be unallowable . . . because a contractor violation of Title VII would breach this contract," i.e., FAR 52.222-26. Id. at 1043. Further, the court observed, the conclusion that the cost of an adverse Title VII judgment is unallowable is "underscored by the clear public policy of Title VII," which precludes the government from being "complicit" in discrimination by subsidizing its costs. Id. at 1044.

The court then turned to the question of whether the same result would obtain where the discrimination complaints are settled before judgment. In that circumstance, the court of appeals observed, its earlier ruling in Boeing North American, Inc. v. Roche, 298 F.3d 1274 (Fed. Cir.

6

2002), dictated that defense and settlement costs would be allowable "only if the contractor can show that the plaintiff in the Title VII suit had very little likelihood of success." Id. at 1038, 1041, 1045.[2]

In the present case, Bechtel does not dispute that if the Tecom standard applies, then its costs of defending against and settling the two discrimination suits at issue here would not be allowable. See Pl.'s Mem. at 15–18, 27–30 & n.12. Thus, it does not disagree that if it had been found liable for the alleged discrimination, then the costs of defending against the suit would have resulted from a breach of the non-discrimination clause of its contract with the Department. See id. Nor does Bechtel take issue with the contracting officer's determination that the plaintiffs in the discrimination cases had more than very little likelihood of prevailing on their claims. See id.; see also Pl. Bechtel Nat'l Inc.'s Mem. in Opp'n to the Def.'s Cross-Mot. for Summ. J. & Reply in Supp. of Its Mot. for Summ. J. (Pl.'s Reply) at 14 n.11, ECF No. 18.

Rather, Bechtel argues, as noted above, that this case is distinguishable from Tecom because the contract at issue in this case—at clause I.113—"specifically provides that costs incurred to defend and settle third party claims are allowable, thus establishing a specific and clear agreement in advance that [Bechtel] is eligible for reimbursement of these types of costs." Pl.'s Mem. at 16. But while subparagraph (e) of clause I.113 states that the contractor "shall be reimbursed . . . [f]or liabilities (and reasonable expenses incidental to such liabilities, including litigation costs) to third persons," that general right of reimbursement is made subject to the exceptions set forth in subparagraphs (g) and (h) of the clause. DEAR 970.5204-31(e). Subparagraph (g)(1) then makes the allowability of those costs dependent upon whether they are otherwise allowable under the terms of the contract, a determination to which Tecom speaks with respect to contracts that include non-discrimination clauses, as Bechtel's does. See id. § 970.5204-31(g)(1) (providing that "[n]otwithstanding any other provision of this contract, the contractor shall not be reimbursed for liabilities (and expenses incidental to such liabilities, including litigation costs, counsel fees, judgment and settlement) . . . [w]hich are otherwise unallowable by law or the provisions of this contract" (emphasis supplied)); see also FAR 52.216-7 (Clause I.19B of the contract, stating that costs are to be paid by the Department in

---

[2] In ruling that the costs arising out of a breach of the contract's non-discrimination provision were unallowable, the court in Tecom also relied upon the decision of its predecessor court in Dade Brothers, Inc. v. United States, 325 F.2d 239 (Ct. Cl. 1963) (per curiam). See Tecom, Inc., 566 F.3d at 1043–44. In Dade Brothers, the contract included a provision requiring the contractor to abide by all terms and conditions of a collective bargaining agreement with the union. Id. at 1043. The contractor sought to recover the costs of litigating a third party lawsuit, in which a jury had found that the contractor had acted in concert with the union to "wilfully [sic] and maliciously interfer[e] with [the employees'] right to employment under the collective bargaining agreement." Dade Bros., Inc., 325 F.2d at 239. The contractor based its claim for costs on a provision in its contract that specifically provided that the costs of defending against third party suits (including the costs of judgment) were generally allowable. See id. at 239–40. The Court of Claims held nonetheless that "[n]either the wording nor the policy of the litigation reimbursement article of the government contract authorizes reimbursement of expenses incurred because the contractor breached its agreement with the Government or failed to perform the contract faithfully." Id. at 240.

7

"amounts determined to be allowable by the Contracting Officer in accordance with Subpart 31.2 of the [FAR] as in effect on the date of this contract and the terms of this contract" (emphasis supplied)).

The exception set forth in subparagraph (g)(1) is applicable here because, employing the principles set forth in Tecom, the "provisions of the contract" render Bechtel's costs of defending against and settling the discrimination complaints unallowable. As the court of appeals held in Tecom, costs do not comply with the terms of a contract where (as here) they are incurred as a result of a breach of the contract's non-discrimination provision. Such a breach is established where the underlying lawsuit involved a claim of discrimination that was settled, absent a showing that the plaintiff had very little chance of succeeding.

There is no merit to Bechtel's arguments that this interpretation of the contract "leaves subsection (e) of the clause superfluous [and] internally inconsistent" or that it "giv[es] with one hand [in subsection (e)] and tak[es] with another [through subsection (g)(1)]." Pl.'s Mem. at 16. According to Bechtel, it is difficult to conceive of a circumstance in which a third-party legal action would not, if successful, also establish a breach of contract. In the Court's view, however, the holding in Tecom was a limited one and does not necessarily extend to breaches of obligations other than the obligation not to engage in discrimination that is set forth in FAR 52.222-26. It is noteworthy that the court of appeals made reference in Tecom to "the expansive scope of the public policy preventing the government from being complicit in paying for discriminatory employment practices." Tecom, Inc., 566 F.3d at 1044. Indeed, the executive order establishing the Equal Employment Opportunity contract provision states that "[i]t is the policy of the Government of the United States to provide equal opportunity in Federal employment . . . to prohibit discrimination in employment because of race, creed, color, or national origin, and to promote the full realization of equal employment . . . through a positive, continuing program in each executive department and agency." Exec. Order No. 11,246, 30 Fed. Reg. 12,319 (Sept. 24, 1965).[3] The executive order also provides strict penalties for contractors who fail to comply with the equal employment provision, including contract termination and debarment. See id. at 12,320–23. Additionally, the Department of Energy's predecessor agency stressed that "[t]he equal employment and nondiscrimination obligations of Executive Order 11246 and the Civil Rights Act of 1964 are applicable to AEC [the Atomic Energy Commission]" and that "[c]omplaints of contractor discrimination . . . are of special concern." O.S. Hiestand, Jr. & Mark. J. Florsheim, The AEC Management Contract Concept, 29 Fed. Bar. J. 67, 96 (1969).

Given this expansive public policy, a bar against having the government reimburse the contractor for costs resulting from discrimination could be considered part and parcel of the contract's substantive prohibition against discrimination. Additionally, it is not clear that similar public policies could be invoked to preclude the government from paying the costs of other types of liability, even where they result from what might be breaches of substantive obligations in the contract. Indeed, at the oral argument in this case, counsel for the government represented that

---

[3] Subsequent executive orders have amended Executive Order 11,246 to include religion, sex, and sexual orientation as protected characteristics. Exec. Order No. 11,375, 32 Fed. Reg. 14,303 (Oct. 13, 1967); Exec. Order 13,672, 79 Fed. Reg. 42,971 (July 21, 2014).

the Department of Energy has only invoked the rationale of Tecom as a basis for disallowing costs where those costs arise from breaches of contractual anti-discrimination provisions. Oral Argument at 2:37pm–2:41:07pm.

Further, the purpose of subparagraph (e) is to significantly shift to the government the enormous financial risks that are specifically attendant to the operation and cleanup of nuclear facilities. See DEAR 970.5204-31; see also In re Rockwell Int'l Corp., EBCA Nos. C-9509187 et al., 02-2 BCA ¶ 32,018 (Oct. 31, 2001) (noting origins of government's enlistment of private industry in nuclear activities; describing the work as some "of the most complex and dangerous industrial processes ever conducted"; and noting that the relevant "contracts allocated virtually all operational and financial risks to the" government as a "prerequisite to engaging suitable companies"), aff'd sub nom. Abraham v. Rockwell Int'l Corp., 326 F.3d 1242 (Fed. Cir. 2003). Using Tecom to give subparagraph (g)(1) a very broad reading, under which the provision would preclude the recovery of liability costs whenever such costs result from any breach of contract (even if such breach was not the result of willful misconduct, lack of good faith, or a failure to exercise prudent business judgment within the meaning of subparagraph (h)), could significantly undermine that unique purpose.[4] The Court, accordingly, declines to read the rationale of Tecom as applicable whenever liability costs arise out of conduct that could also constitute a breach of contract. Instead, the Court reads the decision as resting upon the unique public policies that underlie the anti-discrimination provisions of the Executive Order, which would be undermined if the government were to effectively subsidize a contractor's discriminatory conduct.[5]

In addition to its textual arguments, Bechtel contends that the Department's interpretation of the contractual language is inconsistent with the parties' course of performance and with certain regulatory history surrounding a 1997 amendment to the DEAR provision included at clause I.113. Pl.'s Mem. at 18–24. That amendment established subparagraph (h)'s prudent business judgment test as a measure of the allowability of the costs of third-party liability. Acquisition Regulations; Department of Energy Management and Operating Contracts, 62 Fed.

---

[4] For instance, Bechtel's costs arising from a personal injury lawsuit could arguably be rendered unallowable under such a reading by virtue of clause I.105, regarding safe working conditions. Pl.'s Reply at 15; see also DEAR 970.5223-1 (stating that "the Contractor shall perform work safely"). And numerous possible third party liabilities and related costs could be rendered unallowable under such a broad interpretation by virtue of clause I.117, which requires Bechtel to comply with "the requirements of applicable Federal, State, and local laws and regulations," because countless third party claims could arise out of some violation of the universe of applicable federal, state, and local laws. Pl.'s Reply at 16.

[5] It is admittedly difficult to square this Court's narrow reading of Tecom with some of the broad language used in the decision, including the court of appeals' characterization of Dade Brothers as holding that the "costs resulting from a breach of a contractual obligation are not allowable costs under the contract." See Tecom, Inc., 566 F.3d at 1043. But in Dade Brothers, the disallowed costs resulted not just from a breach of the contract, but from the contractor's willful misconduct. 325 F.2d at 239. In any event, the holding in Tecom was that where a contract contains a non-discrimination clause, costs resulting from the breach of that clause are not allowable under the terms of the contract. This Court's decision is faithful to that holding.

9

Reg. 34,842-01, 34,844, 34,868–69 (June 27, 1997). In explaining the application of the standard in the Federal Register notice announcing the change, the Department of Energy employed a hypothetical in which a contractor sought reimbursement for third-party liability arising out of a sexual harassment suit. Id. at 34,844. After explaining the steps the contracting officer should take to determine whether the hypothetical contractor exercised prudent business judgment, the Department of Energy stated that it "acknowledge[d] that third-party actions, including employment discrimination complaints, are normal business risks, and is not seeking to shift all such risk to the contractor," but that it "d[id] intend that the contractor assume the risk for management's unreasonable actions or unreasonable failure to act in those situations which carry the potential for third-party liability." Id.

The Court finds that this regulatory history adds little to Bechtel's argument. First, it does not address the application of subparagraph (g)(1) at all. Second, and in any event, the Department of Energy has already conceded that before Tecom it did not treat the costs of liability incurred by contractors in discrimination cases categorically as "liabilities . . . otherwise unallowable . . . by the provisions of the contract" within the meaning of clause I.113(g)(1). The Department was required to revisit the application of clause I.113(g)(1) to discrimination cases as a result of Tecom. As described above, in Tecom the court of appeals held that where costs result from violation of a contract's non-discrimination clause, it is inconsistent with the terms of that clause to allow such costs to be reimbursed by the government. The Department began to disallow these costs after Tecom was decided because clauses I.113(e) and (g)(1) similarly provide that third-party liability costs are not reimbursable where they are made "otherwise unallowable by . . . the provisions of th[e] contract."

Bechtel misses the mark when it argues that the Department's revised application of clauses I.113(e) and (g)(1) in the discrimination context results in a "rewrite" or unilateral change in the contract that violates the parties' original understanding of the Department's obligations and Bechtel's rights. This argument conflates a change in a contractual standard with a change in how the standard is applied as mandated by an intervening change in (or clarification of) the law. The language of the contract does not reflect an intent that Bechtel would be reimbursed for third-party liabilities incurred in discrimination cases in particular; in fact, nothing in the contract mentions reimbursement for the cost of such liabilities specifically. Instead, the language of the contract reflects a more general intent that Bechtel would be reimbursed for third-party liabilities except where they are "otherwise unallowable by the provisions of . . . the contract" or are the product of willful misconduct, lack of good faith, or a failure to exercise prudent business judgment. As a matter of law, Tecom established that costs resulting from a breach of the FAR's non-discrimination provision are "otherwise unallowable" under a contract that contains such a provision.

In short, the costs at issue here, which were incurred as a result of violations of the contract's anti-discrimination provision within the meaning of Tecom, are not allowable under the terms of clauses I.113(e) and (g)(1). Accordingly, the government is entitled to judgment as a matter of law as to Bechtel's claim that the Department of Energy violated the contract by disallowing the costs it incurred to defend and pay for the settlement of the two discrimination complaints at issue in this case.

## CONCLUSION

For the reasons set forth above, Bechtel's motion for summary judgment is **DENIED**. The government's motion for summary judgment is **GRANTED**. The Clerk is directed to enter judgment accordingly. Each side shall bear its own costs.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge